IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JANELLE BOWMER | : | CIVIL ACTION |
| | : | NO. 08-5869 |
| v. | : | |
| | : | |
| NOVASTAR MORTGAGE FUNDING | : | |
| TRUST, SERIES 2006-1; MORTGAGE | : | |
| ELECTRONIC REGISTRATION | : | |
| SYSTEMS, INC.; and JPMORGAN | : | |
| CHASE BANK, N.A. (as Trustee for | : | |
| Novastar Mortgage Funding Trust, Series | : | |
| 2006-1) | : | |

O'NEILL, J.                                            MAY 5, 2010

## MEMORANDUM

Plaintiff filed her first amended complaint on March 10, 2009 seeking rescission of her home mortgage refinancing transaction with NovaStar Home Mortgage, Inc. pursuant to the Truth in Lending Act, 15 U.S.C. § 1601, et seq.[1]  The remaining defendants have moved to dismiss plaintiff's first amended complaint and I also have before me plaintiff's response and defendants' reply.  I will deny defendants' motion.

## BACKGROUND

Plaintiff owns a home on Farrington Road in Philadelphia, Pennsylvania.  In late 2005, she received a letter from NovaStar Home Mortgage containing an offer to refinance her house and obtain some cash.  She contacted NovaStar Home Mortgage and was sent a Truth in Lending

---

[1]        Plaintiff also included a second count pursuant to the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605 against Chase Home Finance, LLC.  Plaintiff filed a notice of dismissal on April 7, 2009 dismissing Chase and the second count pursuant to Federal Rule of Civil Procedure 41(a)(1)(A).  (D. 18).  Therefore, I will not address the arguments in defendants' motion directed at the second count.

Disclosure Statement[2] dated November 16, 2005, which said the estimated annual percentage rate on her home loan would be 9.656% and the estimated total finance charge would be $198,018.88. A second TILDS dated January 5, 2006 stated that the estimated APR for the loan was 10.819% and that the estimated total finance charge was $255,409.28. A third TILDS dated January 9, 2006 stated that the APR for the loan was 10.736% and the total finance charge was $254,037.54. The amounts on the third TILDS did not indicate they were estimates.

Plaintiff also was given a Pennsylvania Application Disclosure dated January 9, 2006, that listed various non-refundable application costs such as a $350.00 appraisal fee, a $33.90 credit report fee and a $1,183.75 "Other Third Party Fee."

In January 2006, plaintiff received a loan of $111,600 from NovaStar Home Mortgage. NovaStar Home Mortgage then transferred plaintiff's mortgage to defendant Mortgage Electronic Registration Systems, Inc. In or about April 2006, the mortgage was assigned to NovaStar Mortgage Funding Trust, Series 2006-1 and JP Morgan Chase acted as trustee for the Trust.[3] Plaintiff paid off the mortgage in or about February 2008. In or about October and November

---

[2]     Plaintiff's claims are based on three Truth In Lending Disclosure Statements, a Pennsylvania Application Disclosure and a Notice of Right to Cancel. However, she did not attach copies of these documents to her complaint. Defendants have attached the three TILDS and the Notice of Right to Cancel to their motion. Plaintiff attached the PAD to her response. Plaintiff does not dispute the authenticity of any the exhibits. Therefore, I will consider these documents on this motion. See Rossman v. Fleet Bank (R.I.) Nat. Ass'n, 280 F.3d 384, 388 (3d Cir. 2002) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.") (quoting Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

[3]     Plaintiff's first amended complaint also alleges that Wilmington Trust Company acted as a trustee for the Trust and it was named as a defendant. On April 9, 2010, plaintiff stipulated to the dismissal of Wilmington Trust. (D. 24).

2

2008, plaintiff sent letters to defendants rescinding her mortgage transaction. When the

transaction was not rescinded, plaintiff filed this action.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss all or part of an action

for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

Typically, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed

factual allegations," though plaintiff's obligation to state the grounds of entitlement to relief

"requires more than labels and conclusions, and a formulaic recitation of the elements of a cause

of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "Factual

allegations must be enough to raise a right to relief above the speculative level on the assumption

that all of the allegations in the complaint are true (even if doubtful in fact)." Id. (citations

omitted). The complaint must state "'enough facts to raise a reasonable expectation that

discovery will reveal evidence of' the necessary element." Wilkerson v. New Media Tech.

Charter School Inc., 522 F.3d 315, 321 (3d Cir. 2008) (quoting Twombly, 550 U.S. at 556). The

Court of Appeals has recently made clear that after Ashcroft v. Iqbal, --- U.S. ---, 129 S. Ct.

1937, 1955, 173 L. Ed. 2d 868 (2009), "conclusory or 'bare-bones' allegations will no longer

survive a motion to dismiss: 'threadbare recitals of the elements of a cause of action, supported

by mere conclusory statements, do not suffice.' To prevent dismissal, all civil complaints must

now set out 'sufficient factual matter' to show that the claim is facially plausible." Fowler v.

UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Iqbal, 129 S. Ct. at 1949). The

Court also set forth a two part-analysis for reviewing motions to dismiss in light of Twombly and

Iqbal: "First, the factual and legal elements of a claim should be separated. The District Court

must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" Id. at 210-11 (quoting Iqbal, 129 S. Ct. at 1950). The Court explained, "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." Id. (citing Phillips v. County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)). "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" Iqbal, 129 S. Ct. at 1949.

ANALYSIS

TILA is intended to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." 15 U.S.C. § 1601(a). Further, "[b]ecause the TILA is a remedial consumer protection statute, . . . it should be construed liberally in favor of the consumer." Rossman, 280 F.3d at 390 (internal quotations omitted). The statute "requires creditors to provide borrowers with clear and accurate disclosures of terms," Beach v. Ocwen Federal Bank, 523 U.S. 410, 412, 118 S. Ct. 1408, 140 L. Ed. 2d 566 (1998), and imposes strict liability on creditors who do not, see 15 U.S.C. § 1640(a) ("[A]ny creditor who fails to comply with any requirement imposed under this part . . . with respect to any person is liable to such person.").

TILA and its implementing regulations, known collectively as Regulation Z, require

lenders to make a series of "material disclosures"[4] to borrowers for transactions such as

plaintiff's consumer credit transaction.[5] See 15 U.S.C. § 1638 (listing required disclosures); 12

C.F.R. §§ 226.17, 226.18 (requiring disclosures).  Specifically, the lender is required to disclose

the finance charge, the amount financed and the annual percentage rate.  15 U.S.C. § 1638(a); 12

C.F.R. § 226.18.  Furthermore, "[b]ecause the purpose of the TILA is to assure meaningful

disclosures, 'the issuer must not only disclose the required terms, it must do so accurately.'"

Roberts v. Fleet Bank (R.I.), 342 F.3d 260, 266 (3d Cir. 2003) (quoting Rossman, 280 F.3d at

390-91); Smith v. Chapman, 614 F.2d 968, 977 (5th Cir. 1980) ("A misleading disclosure is as

much a violation of TILA as a failure to disclose at all.").

     One of TILA's protections affords an obligor the right to rescind

> any consumer credit transaction . . . in which a security interest . . . is
> or will be retained or acquired in any property which is used as the
> principal dwelling of the person to whom credit is extended . . . until
> midnight of the third business day following the consummation of the
> transaction or the delivery of the information and rescission forms
> required under this section together with a statement containing the
> material disclosures required under this subchapter, whichever is

---

[4]    "The term 'material disclosures' means the disclosure, as required by this subchapter, of the annual percentage rate, the method of determining the finance charge and the balance upon which a finance charge will be imposed, the amount of the finance charge, the amount to be financed, the total of payments, the number and amount of payments, the due dates or periods of payments scheduled to repay the indebtedness, and the disclosures required by section 1639(a) of this title."  15 U.S.C. § 1602(u).

[5]    A "consumer credit transaction" includes a mortgage "secured by the consumer's principal dwelling, other than a residential mortgage transaction, a reverse mortgage transaction, or a transaction under an open end credit plan . . ." 15 U.S.C. § 1602(aa).  Plaintiff pleads that the note secured by the mortgage was not for the purpose of the "acquisition or initial construction" of the property but rather for a home repair.  Comp. ¶ 103.  I must accept this factual allegation as true.  Therefore, this was not a "residential mortgage transaction."  See 15 U.S.C. § 1602 (w).  Defendant does not argue that this was a residential mortgage transaction, reverse mortgage transaction or a transaction under an open end credit plan.

> later, by notifying the creditor, in accordance with regulations of the
> Board, of his intention to do so.

15 U.S.C. § 1635(a); see also 12 C.F.R. § 226.23(a)(3).  Thus, failure to disclose or inaccurate

disclosure of the proper finance charge, amount financed, APR, total payments or payment

schedule constitutes a material violation which entitles the borrower to rescind the loan.  Id.; see

Seldon v. Home Loan Services, Inc., 647 F. Supp. 2d 451, 460 (E.D. Pa. 2009) ("[A]n inaccurate

disclosure, like no disclosure at all, gives rise to a right to rescind."); Brodo v. Bankers Trust Co.,

847 F. Supp. 353, 356 (E.D. Pa. 1994).  The right to rescind for failure to deliver the rescission

information and/or material disclosures expires three years "after the date of consummation of

the transaction or upon the sale of the property, whichever occurs first . . . ."  15 U.S.C. §

1635(f); see also 12 C.F.R. § 226.23(a)(3).  The consumer may exercise the three-year rescission

right against any assignee of the obligation.  15 U.S.C. § 1641(c).

Plaintiff's complaint seeks rescission of the mortgage loan based on three alleged

violations of TILA related to defective disclosures.  First, she alleges that the Truth in Lending

Disclosure Statements she received contained "false, inconsistent, unclear information as to the

cost of credit, expressed as an annual percentage rate."  Second, she alleges that the TILDS

contained "false, inconsistent, unclear information as to the total finance charge."  Third, plaintiff

argues that the PAD she was given which identified certain non-refundable fees misrepresented

her rescission rights.  I will address plaintiff's first and second claims in part A and her third

claim in part B below.

## A.     APR and Total Finance Charges

The first TILDS dated November 16, 2005 was signed by plaintiff on December 15,

2005 and discloses:

| ANNUAL PERCENTAGE RATE<br><br>The cost of your credit as a yearly rate | FINANCE CHARGE<br><br>The dollar amount the credit will cost you |
|---|---|
| *         9.656% | $           *   198,018.88 |

Toward the bottom–but above the plaintiff's signature–the document notes that an asterisk indicates that the number is an estimate. The second TILDS is similar to the first but was prepared on January 5, 2006, was signed by plaintiff on January 9, 2006 and discloses an estimated APR of 10.819% and an estimated finance charge of $255,409.28. The third TILDS has a slightly different appearance than the first two; it is dated January 9, 2006, was signed by plaintiff on January 9, 2006 and discloses an APR of 10.736% and a finance charge of $254,037.54. This third TILDS does not indicate that the APR or finance charge are estimates.

Plaintiff was also given a document titled "Pennsylvania Application Disclosures" dated January 9, 2006[6] but was not signed by plaintiff. It states

> FEES YOU MUST PAY
>
> Set forth below are some of the fees you will be required to pay in connection with your application for a mortgage loan with us. This disclosure does not disclose all of the fees and charges that you may be obligated to pay in connection with your loan. Estimates of those other fees and charges are reflected on the Good Faith Estimate of settlement charges and are generally refundable prior to settlement only if the goods or services to which the costs relate have not been ordered, unless otherwise required by applicable law.

The first fee listed on the PAD is a $375 application fee. With respect to refundability, the PAD

---

[6]       Plaintiff does not allege the date of the actual closing. The documents from the closing provided by both plaintiff and defendant are dated January 9, 2009.

states the application fee

> is refundable if your mortgage loan fails to close within the time, and at the rate, term and overall cost, specified in any lock-in and/or commitment agreement between you and your lender; provided, however, that the application fee will not be refunded if such failure to close is due to your negligence, or your refusal to accept and close on a loan commitment or your refusal or inability to provide information necessary for processing, including but not limited to, employment verifications and verifications of deposits.

The PAD also states that the appraisal fee of $350.00, credit report fee of $33.90 and "Other Third-Party Fee" of $1,183.75 were non-refundable.

Preliminarily, the TILDS do not violate any of the technical requirements of TILA or Regulation Z. Plaintiff does not allege that the final TILDS she received varied from the terms of the loan. Nor does she contend that the final TILDS was untimely.[7] Furthermore, providing the first and second TILDS–which were clearly labeled estimates–is not a per se violation of TILA because Regulation Z expressly allows creditors to give estimates. See 12 C.F.R. § 226.17(c)(2)(i) ("If any information necessary for an accurate disclosure is unknown to the creditor, the creditor shall make the disclosure based on the best information reasonably available at the time the disclosure is provided to the consumer, and shall state clearly that the disclosure is an estimate."); In re McNinch, 250 B. R. 848 (Bankr. W.D. Pa. 2000) (holding there was no TILA violation when "[t]he first TILA disclosure statement was clearly labeled as an estimate, and all terms changed from the first disclosure statement were disclosed in the second disclosure statement."). Nor can re-disclosure of loan terms be a per se violation of TILA because

_____

[7] The TILDS in this transaction needed only to be provided at some point prior to the consummation of the transaction. See 12 C.F.R. § 226.17(b) (identifying other types of transactions which Congress determined require earlier disclosures).

Regulation Z expressly provides for re-disclosure of early estimates in certain situations.  See 12 C.F.R. § 226.17(e)-(f);[8] see also Lynch v. RKS Mortgage, Inc., 588 F. Supp. 2d 1254, 1258 (E.D. Cal. 2008) ("Accepting Plaintiffs' argument [that] the discrepancy between the two disclosures alone constitutes a TILA violation would in essence prevent a lender from ever offering a different loan proposal, because, according to Plaintiffs, the difference between a subsequent proposal and its predecessor might be deemed "confusing" to the average consumer, therefore running counter to TILA.  That conclusion is both illogical and contrary to the applicable law.")

Instead, plaintiff argues that the changes to the APR and finance charges revealed for the first time at the closing constituted an illegal bait-and-switch.  If she did not accept the new rate and finance charge and close on the deal, then she would be financially penalized.  The Court of Appeals examined bait-and-switch schemes in the context of TILA's purposes in Rossman, 280 F.3d 384.  Plaintiff argues that the Court's holding in Rossman that under certain circumstances a bait-and-switch can violate TILA is applicable here.  Defendant argues that Rossman is distinguishable.  I agree with defendant's conclusion for the reasons set forth below.

---

[8]        Those provisions state:

(e) Effect of subsequent events. If a disclosure becomes inaccurate because of an event that occurs after the creditor delivers the required disclosure, the inaccuracy is not a violation of this regulation, although new disclosures may be required under paragraph (f) of this section, § 226.19, or § 226.20.

(f) Early disclosures. If disclosures required by this subpart are given before the date of consummation of a transaction and a subsequent event makes them inaccurate, the creditor shall disclose before consummation:
        (1) Any changed term unless the term was based on an estimate in accordance with § 226.17(c)(2) and was labelled an estimate:
        (2) All changed terms, if the annual percentage rate at the time of consummation varies from the annual percentage rate disclosed earlier by more than 1/8 of 1 percentage point in a regular transaction....

In Rossman, the defendant Fleet had advertised that its credit card came with no annual fee. After Rossman had applied for and signed the credit card agreement Fleet changed the terms and required an annual fee. On Fleet's motion to dismiss, the District Court dismissed Rossman's TILA claim holding that the legality of bait-and-switch schemes is outside TILA's narrow focus on disclosure. The Court of Appeals reversed and remanded. The Court began its analysis by noting that in a bait-and-switch scheme "the deception occurs at the time of the bait advertisement." Id. at 396.[9] The Court next looked at Clark v. Troy & Nichols, Inc., 864 F.2d 1261 (5th Cir. 1989), in which the defendant Troy & Nichols offered to obtain a mortgage for Clark on certain terms and the parties entered into an agreement to that effect. Subsequently, Clark was offered a substantially less advantageous set of terms which he refused and the credit arrangement was never consummated. Although the Fifth Circuit in Clark and the District Court in Rossman outright rejected bait-and-switch actions under TILA,[10] the Court of Appeals found the dissent's position in Clark to be persuasive and in line with the purposes of TILA.

> The majority concludes that even though the lender never intended to extend credit on the terms disclosed, the accuracy of the disclosures remain untainted. In my view, an intention from the outset not to extend credit on disclosed terms is far more egregious than inaccurate terms. On careful review of the disclosures, one might

---

[9]     The Court also initially relied on Federal Trade Commission and Regulation Z provisions that are only applicable to open-end credit and advertising and are not applicable here. Id.

[10]     Clark, 864 F.2d at 1264 ("The Truth in Lending Act does not provide a cause of action when a lender engages in 'bait and switch' techniques. It does require that the lender make certain disclosures with respect to the offered terms."); see also Rossman 280 F.3d at 396 (noting that the District Court rejected plaintiff's position).

> detect an inconsistency between the interest rate promised and the amortization schedule disclosed. By contrast, there is no way to enter the lender's mind to determine whether he means what he discloses.
>
> Disclosures feigning one's true intention, in my view, are inaccurate.

Rossman, 280 F.3d at 397 (quoting Clark, 864 F.2d at 1266 (Thornberry, J., dissenting)) (concluding "[b]ecause the TILA is to be construed strictly against the creditor, [Ramadan v. Chase Manhattan Corp., 156 F.3d 499, 502 (3d Cir. 1998)], it is at least debatable that the dissent had the better understanding of the accuracy required by the TILA. We need not enter that particular debate, however, because we believe, in any event, this case is distinguishable from Clark.").

The Court characterized Clark as "a classic bait-and-switch case[:] the consumer is "first attracted by a deceptive offer" and then, "[h]aving obtained his audience, the lender attempted to switch the offer to a set of terms more favorable to itself and less favorable to the borrower." Id. However, in Clark "[a]ll of this occurred before the consummation of an agreement." Id. Clark was able to, and indeed chose to, refuse the "switch" because he received the accurate disclosures prior to signing the deal. The Court distinguished Clark's situation from Rossman's in which the switch was not revealed until after she signed the credit card agreement. Additionally, the Court found it significant that it appeared Rossman "was not entirely free, following notice of the pending imposition of the annual fee, to walk away from her credit arrangement in the same way that Clark was upon receiving his second set of disclosures." Id. at 398. Rossman faced certain penalties if she attempted to walk away from the credit card agreement. Id. (noting that "[c]redit card holders may have balances they are unable to pay off within a month. And if Rossman did

attempt to cancel the card while carrying a balance, Fleet retained the contractual authority to assess a 24.99% APR on the remaining balance.").  Under these circumstances, where the plaintiff may not have been able to avoid paying the annual fee, "the notice of change was correspondingly less valuable than initial disclosure of the annual fee would have been." Id.[11] The Court held that if Rossman's allegations were true, i.e. that Fleet intentionally and in fact misled her with its disclosure, then "such misleading statements are inaccurate for purposes of the TILA, and violate its requirements." Id. at 400.

Rossman is distinguishable from the present case.  First, the Court made its findings in the context of Subpart B of Regulation Z which governs open-ended credit transactions.  This case concerns Subpart C and closed-end transactions.  See Asher v. Chase Bank USA, N.A., 310 Fed. Appx. 912, 919 (7th Cir. 2009) (noting Subpart B and C have separate sets of rules for open-ended and closed-ended transactions respectively).  This is an important distinction because the policies underlying the two sections are different.  Second, the "switch" in Rossman occurred *after* the transaction was consummated, whereas NovaStar Home Mortgage pulled the "switch" just prior to or at the closing.

Finally, I note that plaintiff inadequately plead an apparent element for a bait-and-switch claim.  Plaintiff does not allege that the defect in the disclosures are due to an intentional or deliberate deception on the part of NovaStar Home Mortgage.  See Rossman, 280 F.3d at 389 ("These "no annual fee" offers, Rossman alleges, were made by Fleet with the intention of

---

[11]     The Court also noted "Congress has imposed special requirements on credit card solicitations that did not apply to the mortgage in Clark" such that credit card issuers, in addition to initial disclosures, must also disclose early on basic terms of the agreement in the solicitation itself. Id.

imposing a fee shortly thereafter.").  She only alleges that the TILDS "provided to plaintiff provided false, inconsistent, unclear information" with respect to the APR and finance charge which "confusion was compounded by the inconsistent disclosures concerning the title insurance premium . . ."  Comp. ¶ 28-29.  Plaintiff's complaint cannot fairly be construed to allege that the first TILDS was defective because any defendant intentionally misled her.  Absent an allegation that the disclosures were intentionally misleading, I cannot conclude that the first TILDS–or the "bait"–is inaccurate for purposes of TILA.

      **B.**      **Notice of Right to Cancel**

Plaintiff also contends that TILA was violated because her right to rescind the transaction was not clearly disclosed.  She argues that the Pennsylvania Application Disclosure misrepresented her rescission rights and contradicted the Notice of Right to Cancel because the PAD stated that certain fees were non-refundable.

At the time of the closing, Pennsylvania's Mortgage Bankers and Brokers and Consumer Equity Protection Act provided that a licensee such as NovaStar Home Mortgage "shall disclose to the borrower, in writing, at the time of a loan application which fees paid or to be paid are nonrefundable."  63 Pa. Stat. § 456.308 (repealed by Pub. L. 796, No. 56, § 3(b)(1), effective Nov. 5, 2008 and recodified at 7 Pa. Cons. Stat. Ann. § 6121(10)).  Specifically, the Pennsylvania statute required a licensee to

> Refund all fees, other than those fees paid by the licensee to a third party, paid by an applicant borrower when a mortgage loan is not produced within the time specified by the mortgage banker, loan correspondent, mortgage broker or limited mortgage broker at the rate, term and overall cost agreed to by the borrower, provided, however, that this provision shall not apply when the failure to produce a loan is due solely to the borrower's negligence, his refusal

to accept and close on a loan commitment or his refusal or inability to provide information necessary for processing, including, but not limited to, employment verifications and verifications of deposits.

Id.

TILA requires that "[t]he creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section." 15 U.S.C. § 1635(a). Regulation Z tracks this language and specifies that a rescission notice

> be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:
> (i) The retention or acquisition of a security interest in the consumer's principal dwelling.
> (ii) The consumer's right to rescind the transaction.
> (iii) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.
> (iv) The effects of rescission, as described in paragraph (d) of this section.
> (v) The date the rescission period expires.

12 C.F.R. § 226.23(b)(1). With respect to the "effects of rescission" which must be disclosed, Regulation Z states in relevant part

> (1) When a consumer rescinds a transaction, the security interest giving rise to the right of rescission becomes void and the consumer shall not be liable for *any amount*, including any finance charge.
>
> (2) Within 20 calendar days after receipt of a notice of rescission, the creditor shall *return any money or property that has been given to anyone in connection with the transaction* and shall take any action necessary to reflect the termination of the security interest.

12 C.F.R. § 226.23(d) (emphasis added). The Official Staff Commentary[12] to subpart (d)(2)

---

[12]   "[A]s part of TILA's administrative framework, the [Board of Governors of the Federal Reserve System's] staff periodically issues authoritative interpretations of TILA and Regulation Z through the Official Staff Commentary to TILA . . . The Supreme Court has

states

> 1.  Refunds to consumer.  The consumer cannot be required to pay any amount in the form of money or property either to the creditor or to a third party as part of the credit transaction.  Any amounts of this nature already paid by the consumer must be refunded.  "Any amount" includes finance charges already accrued, as well as other charges, such as broker fees, application and commitment fees, or fees for a title search or appraisal, whether paid to the creditor, paid directly to a third party, or passed on from the creditor to the third party.  It is irrelevant that these amounts may not represent profit to the creditor.

TILA's disclosure requirement may be violated if a creditor provides "confusing, contradictory, or misleading provisions" alongside the rescission notice.  Mount v. LaSalle Bank Lake View, 926 F. Supp. 759, 765 (N.D. Ill. 1996).  When determining whether a TILA rescission notice was clearly disclosed I may "consider not only the language of the TILA required notice, but . . . also . . . information presented to the consumer outside of the TILA required notice."  Williams v. Empire Funding Corp., 109 F. Supp. 2d 352, 358 n.8 (E.D. Pa. 2000).  "To determine whether the notice that [plaintiff] did receive was confusing or misleading, we have no choice but to embark on a close reading of that notice . . . ."  In re Porter, 961 F.2d 1066, 1076 (3d Cir. 1992).  I must determine whether plaintiff's reading of the PAD is "sensible" or "plausible."  Id.  "If the notice is subject to two (2) or more sensible readings, and different results ensue depending upon which of the two (2) readings is adopted, the creditor has not provided the consumer with 'clear notice of what [the] right to rescind entail[s].'"  Williams, 109

---

instructed that the pronouncements of the Board or its staff interpreting TILA and/or Regulation Z, when applicable, are to be 'dispositive unless [they are] demonstrably irrational.'"  Williams v. Empire Funding Corp., 109 F. Supp. 2d 352, 358 (E.D. Pa. 2000) (quoting Ford Motor Credit Co. v. Milhollin, 444 U.S. 555, 566, 566 n.9, 100 S. Ct. 790, 797, 797 n.9, 63 L. Ed. 2d 22 (1980); citing Anderson Bros. Ford v. Valencia, 452 U.S. 205, 101 S. Ct. 2266, 2274, 68 L. Ed. 2d 783 (1981) (citing Milhollin)).

F. Supp. 2d at 358 (quoting Porter, 961 F.2d at 1077). As this Court has held, "the relevant inquiry is not whether plaintiffs' right to rescind the financing agreement was ultimately altered by the inconsistency, but rather whether notice of that right is subject to more than one sensible reading." Id. at 360 (citing Porter, 961 F.2d at 1077).

In Williams, the plaintiffs had entered into a sales agreement with a company to perform home improvements. They later executed a financing agreement to pay for the services. The financing agreement contained a notice of the plaintiffs' right to rescind the contract "without cost or obligation . . . within 3 business days of the date of this Contract." However, directly below this notice, and as required under Pennsylvania law, the financing agreement contained a notice of a right to rescission "subject to liability for any liquidated damage provision . . . [if the right to rescission is exercised] not later than five (5) p.m. on the business day following the date [of the contract]." The plaintiffs contended that including both the three day notice required under TILA and the inconsistent one day notice required under Pennsylvania law in the financing agreement rendered the TILA notice unclear. This Court agreed. It found that a reasonable consumer could read the financing agreement and "conclude that if she wishes to cancel the contract, she must do so within three (3) business days after the date of the transaction" or "conclude that the second disclosure trumps the first so that if she wishes to cancel the contract, she must do so within one (1) day of the date of the contract." Id. at 359. Furthermore, the consequences of a rescission were found to be inconsistent. Id. If the consumer rescinded the contract within one day of the date of the contract, then the Pennsylvania provision stated that she would remain liable for "any liquidated damage provision . . . authorized by law," whereas if she cancelled within three days of the transaction the TILA notice provided that she could do so

16

"without cost or obligation." Id. "Thus, a reasonable consumer could not know if cancelling the contract later than one day after the date of the contract, but within three (3) days of the date of the transaction, relieves the consumer of liability for associated costs or damages." Id. at 359-60.

Similarly, in Jenkins v. Landmark Mortgage Corp. of Virginia, 696 F. Supp. 1089 (W.D. Va. 1988), a letter stating that the plaintiff would be liable for certain fees if she attempted to rescind violated TILA. There, the plaintiff closed on a consumer credit transaction secured by her home on August 25, 1987 at which she received a TILA-compliant Notice of Right to Cancel. The next day a complete set of the loan documents including the TILA disclosure statement was mailed to her with a cover letter stating, in relevant part,

> Please let me know if you have any questions and as I discussed with you at closing if you desire to cancel this transaction you must do so by Friday night [August 28, 1987], but that will not mean that you are relieved of all fees or expenses associated with the transaction as it has advanced to this point.

The Court held that the language in the letter claiming that the plaintiff would not be "relieved of all fees or expenses associated with the transaction as it has advanced to this point" was misleading with respect to the plaintiff's rescission right. The Court stated

> It is unnecessary for the court to investigate thoroughly the subtle and, in this setting, academic, question of whether a credit consumer could still be potentially liable for some expenses incurred outside of the credit transaction which nevertheless were incurred because of that credit transaction. It is evident that the quoted statement is, at best, misleading and effectively contradictory to the pertinent federal regulations, for plaintiff clearly was not liable for expenses incurred within the context of the credit transaction.

Id. at 1094 (citing Official Staff Interpretations, 12 C.F.R. 226.26(d)(1)).

As part of this fact-intensive inquiry, I may also consider the timing of when documents

which purport to conflict with a TILA rescission notice were given to a plaintiff. In <u>Rodash v. AIB Mortgage Co.</u>, 16 F.3d 1142, 1146 (11th Cir. 1994), the creditor was found to have violated TILA when it provided the plaintiff with an Election Not to Cancel form at the closing alongside the rescission notice. The Court considered the timing of when the Election notice was given in deciding whether the notice to rescind was clear.

Here, plaintiff does not contend that the PAD or Notice of Right to Cancel standing alone was defective. Rather, she argues that the Notice of Right to Cancel was not clearly disclosed because the PAD contradicted the Notice of Right to Cancel. As stated above, the Notice of Right to Cancel informed plaintiff that she had "a legal right under federal law to cancel this transaction, without cost." It further accurately advised that if she cancelled the transaction, "the mortgage, lien or security interest is also cancelled" and that "we must return to you any money or property you have given to us or to anyone else in connection with this transaction."

The PAD, on the other hand, stated that the appraisal fee, credit report fee and other third-party fee were unqualifiedly "Non-refundable." The application fee was described as "refundable if your mortgage loan fails to close within the time, and at the rate, term and overall cost specified in any lock-in and/or commitment agreement." Furthermore, the PAD noted that the application fee "will not be refunded if such failure to close is due to your negligence, or your refusal to accept and close on a loan commitment or your refusal or inability to provide information necessary for processing . . . ." The PAD–which, according to the Pennsylvania statute, was to be given to the plaintiff at the time of the loan application–bears the date of the closing on it.

A reasonable consumer given the PAD at the time of the closing could conclude that if she rescinded the transaction then despite what the Notice of Right to Cancel stated her application fee, appraisal fee, credit report fee and other third-party fee would not be refunded. The PAD does not contain any language indicating that those fees would be refunded if the consumer elected to rescind under the Notice of Right to Cancel.

Defendants argue that the text of the PAD makes it clear that it only applies to the period of time before the loan is consummated. I disagree. Defendant first points to the introductory paragraph which informed plaintiff that other fees–different from those listed on the PAD–could be refunded "prior to settlement" under limited circumstances "unless otherwise required by applicable law." This statement is irrelevant with respect to whether the fees listed on the PAD would be refundable after settlement. Defendant also points to the text accompanying refundability of the application fee which noted that the application fee is refundable "if your mortgage loan fails to close" for reasons attributable to the lender, but will not be refunded "if such failure to close" is the fault of the borrow. This language does not indicate that there is an exception for a consumer who elects to rescind and under those circumstances the fee will be refunded. Indeed, the application fee language makes clear that the application fee will only be refunded if the mortgage loan fails to close according to the agreed upon terms. It is does not limit the restriction on refundability only to the time prior to closing. A reasonable person could conclude that the restrictions extend beyond the settlement date, especially in light of the fact that plaintiff received the PAD at closing rather than at the time of application.

Defendants' other argument focuses on distinguishing the myriad of cases relied upon by plaintiff in her brief from the case at hand. The cases recognize that these types of claims are

fact-intensive. Thus, it is unlikely that there will be a case with these exact facts. However, the principles of law articulated in <u>Porter</u>, <u>Williams</u> and <u>Jenkins</u> as discussed <u>supra</u> apply with equal weight to the question of law at hand, even if the factual analyses of those opinions are distinguishable.

I conclude that including two inconsistent statements with respect to the refundability of fees related to the transaction at or around the time of the closing "renders the notice of the right to rescission required under TILA unclear, and thus, extends the period for rescission available to plaintiff[] to three (3) years after the date of the transaction." <u>Williams</u>, 109 F. Supp. 2d at 361 (<u>citing</u> <u>Porter</u>, 961 F.2d at 1077). Accordingly, plaintiff has stated a cause of action pursuant to the Truth in Lending Act and defendants' motion to dismiss will be denied.